Good morning, Your Honor. Thank you, Your Honor. The first issue basically, which is a very important issue, is the court's granting of the summary judgment motion. And here you are. The first issue is with Arch. The court granted summary judgment motion as to Arch. Yeah, but you have to speak a little louder. Sure, Your Honor. Okay. Under 18 U.S.C. 2702, the person or an entity providing an electronic communication service or a remote computing service to the public shall not knowingly divulge to any person or any entity the contact of a communication while in an electronic storage by that service. There are several exceptions to the rule. If the service is a remote computing service, then the content may be divulged to a subscriber. And if the service is an electronic communication service, then the content may be divulged to either the recipient, the addressee, or with the lawful consent of the originator of the message. The court decided, the district court decided, that Arch provided a remote computing service. And as such, the statutory defense allowing disclosure to a subscriber, here the city, applied and absolved Arch of any liability. We believe the court erred in applying this rationale for the following reasons. First and foremost, the city contracted with Arch back in October 2001 to purchase text numeric pagers to its employees. These text numeric pagers are a two-way text messaging pagers. So basically under the definition of electronic communication service under 18 U.S.C. 251015, it's defined as an electronic communication service is a service which provides to its users the ability to send or receive wire or electronic communications. In this particular case, the users are the employees. So they are the end users of an electronic communication service. And based on that, Arch had provided an electronic communication service. Second, in its contract with Arch, there was nothing in that contract about subscription archiving messages. There was nothing about who can retrieve those messages. There was no distinction between a subscriber or a user. And Arch even, Jack Devens testified, the account specialist for Arch testified in her deposition that Arch had a policy that when a contact on an account calls and asks for transcript, they would release them. That's all they did. That was their policy. She didn't know the difference and Arch didn't even plead that they knew the difference that the contact calling is either a user or a subscriber. Basically they equated subscriber with whoever paid for the service. This account was for the city. I know Nancy, she's calling from the city. That's a subscriber, I'm divulging them. They didn't even concern themselves with whether there was a policy between the employees and the employer. They divulged the messages. And given that this is an electronic communication service, the consent of the users was required before divulging those messages or those transcripts. Basically, we now live in this day of an age of communication, the communication age. Our thoughts, our ideas, even business messages are instantly sent via text messaging. This has become a way of life. This is not just done for fun. So this issue is very important. Do we now lose our privacy because of a characterization of what the message is or who's paying for it? And this is really an important issue. The court decided based on a declaration that Arch provided a remote computing service. But that was only based on the fact that once you send the text message, it goes into temporary storage. And from the temporary storage, somehow it goes into archives. And it's unknown why the messages are archived. They were not for backup purposes, and they said it was just for recordkeeping purposes. But that was only based on a declaration. Was anybody paying for a storage service? There is no information with respect to that. Arch did it automatically. What does the contract say? The contract did not even approach the archives. No, it does say. It says messaging service on the contract. Yes. Right. So. Text message service. It says messaging service. Exactly, Your Honor. Subject of the contract, not a storage service. Exactly. That's exactly what it said. And now all of a sudden, to make it fit with the statutory defense of remote computing services, this became an archive. If I'm sending a text message, and I'm expecting a privacy in that message, and if someone else is paying for it, does that make a difference? Now, if Arch had a policy in place that differentiated, then that would have been okay, but it didn't. It was a contact on an account. It didn't care. And even with the court's rationale, though, under the remote computing service, the court cited the legislative history, and it said when an addressee intends to actually save the message for the purposes of disclosing the content of that message, that addressee becomes a subscriber within the meaning of the statute. So even if we were to use the court's rationale as a remote computing service, there was still a motive and an intent that should have been taken into consideration, because the city was not a subscriber under that definition. According to the legislative history. Yes. Yes, Your Honor. Are you going to address the proclaimant argument at all? Yes. Okay. Maybe we should turn to that. We should move to that. It's your position that people who use a text messaging service have a reasonable expectation of privacy in the content of their messages? Of course. Is that like a general or in this? Has it ever been decided that people have a reasonable expectation of privacy in their text messages? This has become almost like a telephone now. Text messaging right now, it's a way of life. You send a text message instead of calling. It's a business. So it becomes almost like a telephone communication. Or like an email. And people do have an expectation of privacy. And email is different because it's a little different because with the email, it's stored on a computer hardware. And you have a choice sometimes to save it. And you have direct access to that hardware. With the text messages, it could be deemed as email if you intend to save them. So right now it has become more like a letter. A text message? I would say it's more like a communication in terms of it's a fast... Talking about in the context of our judicial decisions. Maybe treating it like a letter, a telephone call, email. Right now it has become more like a telephone call. Because it's... Now you do it for anything. It's a way of life. You text message for business. It's not just for fun. It's not something that's done... I have an 18-year-old son, so I know. I know about text messaging. Even like when we're late to work. A business person is late to work. An attorney who wants something like drafted or something done right away or things. This has become a way of life. So it is a communication. And there is an expectation of privacy. Was it clearly established at the time that whoever it was this time asked for all of the text messages between Quan and his... I guess all of his text messages. Was it clearly established that there was a reasonable expectation of privacy? At that time, the expectation of privacy happened because of the stated practice of the city. When the city contracted with Arch to purchase to some of its employees... You're talking about the sort of side agreement with their officer responsible. The stated practice was basically the maximum limit is 25,000 characters. Could be letters. Could be anything. If you go over the 25,000 characters, you'd pay for the overages. And the city would not audit you. Unless you're contesting that I don't want to pay for company work, then the city would audit those messages. So in as much as you were allowed to go over the overages and pay for them, then there was an expectation of privacy in those messages. Because the only employee who would pay for an extra overage is an employee who's sending personal messages, who's using that device for personal reasons. So what do you make of the jury's finding that the reason, the sheriff's reason for reviewing the content of the messages was to determine the efficacy of the 25,000 unit? Well, I believe the jury's finding is in error. There's no way really to... If it is in error, it's based on their findings as to... There was testimony on that subject both ways, right? However, Your Honor, any officer of the court has a duty in order to prevent the miscarriage of justice. The district court judge was the one who decided, who basically stated that there was a reasonable expectation of privacy on this issue because of the stated practice and because of what Lieutenant Duke has been doing, who was in charge with collecting the money and are you over the overages and are you that. This is the same judge who then was sitting listening to Lieutenant Duke's testimony who at trial said, I wasn't aware that they were using those for personal purposes. This was in direct contradiction. So when a motion for new trial or to vacate the trial was filed, there was there an error. There was a clear miscarriage of justice. There was contradicted testimony that couldn't even make a plausible sense. Lieutenant Duke was the one that was collecting the money and because it was for personal purposes. Then he testified, I wasn't aware that they were for personal purposes. The chief says, initially in his deposition, who are those that are over the overages? I want to make sure that people are not wasting company time doing off-duty things. Isn't there more, I mean, isn't this, it's very strange. It's almost like, weren't they conducting another criminal investigation at the same time? There was an investigation and this also resulted in another investigation. They were investigating Kwan's girlfriend? Yes. At the time? It's a separate, yeah, during the same time. It's a separate, that was a separate thing. There was a dispatcher involved. Dispatcher was like somehow, she, it was a Hells Angels motorcycle. She text messaged him. So was there ever any testimony or evidence about whether or not they wanted Kwan's text messages to see if there was anything to investigate this other woman? Sergeant Glenn did say, you know, once you get these transcripts, I want to take a look at them. Because there was the phone messages to April Florio. who used to work as a dispatcher, was also having a relationship with Jeffrey Kwan. Right, and she was under investigation for the Hells Angels. Exactly, and she was terminated. And then basically the sergeant who was investigating that said, I want to see if there was anything in those messages. So did we go to the Fourth Amendment reasonable expectation or is this a criminal investigation? This is not related to that, Your Honor. Because when the chief ordered these, it was very clear. It was fresh in his mind. It was in his deposition. It was right after it happened, not two years later at a trial. He said, the lieutenant goes to him, people are killing trees with those overages. The chief says, he takes the top two. And he says, I want to make sure people are not playing games on company time. This is under oath in his deposition. Right, but I'm sure you used that to impeach him at trial. He did admit to remembering saying something like that three times. And then turned around and didn't buy it. But just because the jury doesn't buy it, doesn't mean that a court does not have the duty to make sure the justice is not furthered. That would be my position. Because in this particular case, it wasn't just he said, she said kind of thing. It was clear contradictions and things that don't even add up, don't make sense. The chief said, I didn't know that they were using it for personal purposes. Lieutenant Duke, who was collecting the money, said, I didn't know they were using it for personal purposes. But then why would you order them? Oh, I ordered them to make sure that they were not paying for them. It would not be right. Well, if you didn't know that they were going over and they were paying for them, then how would you know that it's not right to order them? The whole thing defies logic. And so when a motion for a new trial was made, based on the judgment being against the clear weight of the evidence, it should have been vacated on that. I think we've gone over some time. We understand your argument. May I speak again? No, we understand your argument. It's pretty late in the day. Okay, thank you. Thank you. We've spent a lot of time on this case. Thank you. Good afternoon, Your Honors. I'm John Horowitz on behalf of Arch Wireless. May it please the Court. I think that Arch Wireless did nothing more than make a contract with the City of Ontario, provide the services that were required, and then when there was a proper request for the transcripts. Excuse me, I'm sorry. Counsel, you can sit at the counsel table. I can sit over here. You should sit over here up at the counsel table. Unless you've got some wireless communication with you. So Arch Wireless basically did everything that it was properly supposed to do by contract and under the law, and when the proper request was made for divulging the text messages, it did that to the subscriber City of Ontario. And I think from the questions I heard, Your Honor, there may be some concern about, well, the contract doesn't say that there's an archiving process. Well, the contract provided messaging services, and certainly the parties to the contract knew there was an archiving element to it because the City of Ontario requested the text messages from the archive, and Arch Wireless had established the archive. So there's really not a question whether just because the contract doesn't mention it, that that should somehow change things. And I would relate also back to Judge Larson's comment on that point. Under the law, Arch Wireless was providing the stored communications under the SCA. They were providing that service. They were storing these communications. They were under long-term storage. They weren't used for backup. They were not incidental to the transmission. So the archiving was in place, and I think that the point that Judge Larson makes is that that's the service that was being provided. You can't look at the contract now to say that that wasn't the service that was being provided because, in fact, you look at the definitions under the statute, and you look at the services, and there it is. So it does fall under the Stored Communications Act. So I think there's really no question. There's really no serious question. I don't believe that this is a remote computing service. It, therefore, falls under the SCA, and the divulgence was proper. Arch Wireless did nothing wrong and was not liable in any way. I know Your Honors have spent lots of time on this issue. You've looked at it. I really think that, unless there are any other questions, I don't know how else to address. Well, what do you make of the House report that says that in the case of a remote computing service and seeking disclosure of that, the addressee becomes the subscriber? That's in the House report. I don't know who cited it. Maybe Ontario cited it. H.R. Report 99-647-6465, S.E.R. 30. Right, Your Honor. I think that's also referenced in the amended order by Judge Larson. And, really, you have to look at that in terms of, I guess a good analogy is an e-mail system. If I receive an e-mail and I put it in a little sub-file because I want to refer to it later or I want to forward it to a friend or whatever, and I'm holding that e-mail on my system, that's a very different thing than when I delete that e-mail and it's out of my system, and yet the provider of the e-mail service puts that, along with every other e-mail sent to my firm, to every other receiver, an e-mail user, puts that into a stored archive. That stored archive, there's only one subscriber, and that subscriber is not the user. It's the company who contracted for the e-mail service. Whereas if I store that e-mail on my system so that I have access to it and only I have access to it, then I'm considered the subscriber. You can't come in and get that e-mail from me without my permission. If it's deleted and it's on an archive away from my system, then it falls under the Stored Communications Act. It's no longer an electronic communication in process or in transit. It's not something that's still in action. It's gone. It's been deleted. So I think that there really is a difference there. The analysis provided by Judge Larson, I think, addresses it very well. The subscriber in this situation for archived text messages is not the user. It's Ontario. If they keep it on their phones or on their systems that they're using, then they might be considered the subscriber for messages stored on those units. But that's a different thing entirely. Good morning. Actually, good afternoon, Your Honours. My name is Kent Bullard. I represent Ontario Police Department, City of Ontario, and former Police Chief Lloyd Scharf. May it please the Court. I take the Court's point that you've read the briefs and you've considered the issues, and I will try to make my presentation very brief in light of that. We contend that the plaintiff's only reviewable issue on this appeal is the denial of the new trial motion, and we contend that that's also a very easy claim to resolve because of the very, very high standard of review that the Court is aware of. Basically, there would have to be absolutely no evidence in the record to support the jury's finding, and that couldn't be further from the situation here where there was evidence. The record was replete with evidence in the form of the Chief's testimony and Lieutenant Duke's testimony that the purpose was to review the efficacy of the character limit. And the credibility attacks, or arguments, rather, were made to the jury. The jury rejected them. They were made to the district court. The district court rejected them, and they have even less force here in the context of a reviewing court. So we submit that that's their only reviewable claim on appeal and that it has no merit. I would like to briefly, I don't want, we've raised a number of alternative grounds for affirmance in case it were necessary to even go to those. I don't want to belabor them because they stand unrefuted as it stands now. The plaintiff's reply brief did not address any of those. But I would like to at least answer some of the issues that you raised, Judge Wardlaw. You asked, isn't it well established that people have a reasonable expectation of privacy in text messaging? No, I said, was it? Or was it at the time? Well, I don't believe, I think that the relevant question isn't whether people in the abstract or an ordinary person would have such an expectation of privacy. It really is, we're talking about a government employee using a government-issued pager, and we therefore get under the operational realities of the workplace to judge what expectation of privacy was reasonable. We have Lieutenant Duke saying, telling them that no one's going to look at it as long as they pay for the overages. That's correct, Your Honor, and I would submit that the district court really vastly overread the import of Lieutenant Duke's bill-paying arrangement, and that is why the district court rejected the arguments that we make now as our alternative grounds for affirmance. The courts, I think the district court fundamentally read too much into the Lieutenant Duke policy because Lieutenant Duke did not actually address privacy. He was really just addressing what the district court elsewhere called a generous way of streamlining a procedure for paying the bills if there are overages, but he didn't expressly address privacy rights. And a reasonable police officer wouldn't interpret Lieutenant Duke's bill-paying procedure as a license to sort of use these pagers on an unlimited basis, even on duty. I mean, we have to remember, we have to keep this in context. We're talking about a police department, and this court has recognized, even in some very recent cases like the Dybul case, that police departments have a very strong interest in efficiency and making sure that officers are comporting themselves with a high level of propriety. The public has that same interest. In the Dyson and the Rowe case, there were specific findings of violations of internal police rules, and that's why both of them were fired. So it's not really relevant. But the point is, Your Honor, that we have to take— I think that the district court lost sight of these. These are just as much operational realities as Lieutenant Duke's bill-paying procedure. I mean, a reasonable police officer, a SWAT team leader who has issued a pager to facilitate communications in a very dangerous line of work of being on a SWAT team, would not reasonably interpret that to mean, okay, this is—I think the officer could reasonably say, this is a nice convenience, I can use this to send personal messages perhaps on off-duty time as long as I pay for the overages. But he certainly couldn't—he would certainly still have to remember, but wait a minute, I'm a police officer, I'm a SWAT team leader,  and expect that the department could never, ever look at these messages. And I can't, moreover, put my deepest, darkest secrets in these messages and expect that no one is going to ever find out what the contents of them are. Well, he obviously did, subjectively. Well, subjectively, but it doesn't make it reasonable. It makes it somewhat foolhardy and irresponsible. But it certainly doesn't make it reasonable. There's two questions. One is subjective and one is objective, two parts of this question. So subjectively, yes. Objectively is what we're arguing about. Subjectively, we didn't question the subjective component, so I'm not going to question it. No one would want those messages to be made public or expect that they would be or they wouldn't put them on there. One would think so, Your Honor, but elsewhere in the record there was at least a colloquy concerning, and this had to do with when the court was talking about bifurcating damages, there was a colloquy that the same officer, Sergeant Kwan, engaged in essentially phone sex with Plaintiff Florio, who was his girlfriend at the time, even though they knew that that line was being monitored. So, I mean, there was at least a suggestion that, you know, maybe these individuals wouldn't have been dissuaded by that. And, you know, they certainly should have realized that these messages could come to light and would come to light if there was any sort of investigation into misconduct or even the efficiency of the character limit. Unless the court has any other questions about that. Thank you. Anything further? Thank you, Your Honor. Court will recess until 9.30 tomorrow morning. All rise. Eric, can I help you with anything? No, I'm fine. My law clerks will get my stuff. Shall I leave it here? Yeah, go ahead. I'll take it. Good service. Thanks. Okay.
judges: Pregerson, Wardlaw, Leighton